FILED ___ ENTERED
LOGGED ___ RECEIVED
NOV 13 2018
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
          DEPUTY

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Alfred Johnson II, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) being duly sworn, deposes and states as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. This is an Affidavit provided in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41. Specifically, I seek a search and seizure warrant authorizing the search and seizure of the following property for evidence that Andre TURNER violated 21 U.S.C. § 841, possession with the intent to distribute controlled dangerous substances, and 18 U.S.C. § 922(g), possession of a firearm by a prohibited person:

   a. A blue Samsung Galaxy S9+ cellular telephone bearing IMEI number 353515090362055 recovered at 2932 Oakford Avenue (hereinafter "**Subject Electronic Device 1**"). **Subject Electronic Device 1** is described more fully in Attachment A.

   b. A black ZTE cellular phone cellular telephone recovered at 2932 Oakford Avenue (hereinafter "**Subject Electronic Device 2**"). **Subject Electronic Device 2** is described more fully in Attachment A (collectively, the "**Subject Electronic Devices**").

2. The applied for warrant would authorize the forensic examination of the **Subject Electronic Devices** for the purpose of identifying electronically stored data particularly described in Attachment B and using the protocols described in Attachment C by ATF or their authorized representatives, including but not limited to other law enforcement agents assisting in this investigation.

3. I am a Special Agent with ATF and have been since May 10, 2016. I successfully completed the Criminal Investigator Training Program and the ATF Special Agent Basic Training Academy at the Federal Law Enforcement Training Center, located in Glynco, Georgia, where I

received specialized training in the investigation of federal crimes involving firearms, alcohol and tobacco diversion, arson and explosives, and narcotics.[1] I am currently assigned to the Baltimore Field Division. I have participated in numerous investigations involving violent crime, firearms violations, and illegal drugs, including two Title III wiretaps involving these violations. I have arrested or assisted in the arrest of individuals for the above-listed offenses.

4. Prior to employment with ATF, I was a police officer for the Charleston City Police Department in Charleston, South Carolina for three years where I served as a patrol officer and a Special Weapons and Tactics (S.W.A.T.) Team Operator. I also served as an Officer (O-3) in the United States Coast Guard (U.S.C.G.) for six years.

5. Through training and experience, including interviews of and numerous hours of surveillance of suspected drug and firearms traffickers, I am familiar with the actions, traits, habits and terminology utilized by contraband traffickers. In addition, I know traffickers of contraband frequently use cellular telephones, communication devices, and other electronic media storage to further their illegal activities and frequently maintain numerous such electronic devices in an effort to conceal their activities. I also know that traffickers frequently possess firearms to protect narcotics kept in their home and proceeds earned from the sale of narcotics.

6. Based on this specialized training, experience, and participation in other similar drug trafficking and firearm investigations, I know that individuals who are involved in the distribution of narcotics and firearms possession frequently share combinations of common

---

[1] I received a Bachelors Degree in Business Management from South Carolina State University and a Masters Degree in Homeland Security (Counter Terrorism) from American Military University.



characteristics, some of which are as follows:

    a.    **Keeping of documents and records**: Records of narcotics and firearms activity are regularly concealed in various locations (including cellphones) and they take various forms. Documents commonly concealed by traffickers, include but are not limited to notes in code, deposit slips, wired money transactions, savings pass books, hidden bank accounts, photographs of co-conspirators, various forms of commercial paper, personal address books, notebooks, records, receipts, ledgers, travel receipts (rental receipts, airline tickets, bus tickets, and/or train tickets) both commercial and private, money orders, and other papers relating to the ordering, transportation, sale and distribution of narcotics and firearms or other such documents which will contain identifying data on the co-conspirators. These items may also be kept in locations considered safe such as cellphones, safety deposit boxes, residences, vehicles, and on their person, where they have ready access to them;

    b.    **Use of computers and cellphones**: Traffickers, due to advancement in technology, may be utilizing computers, or other electronic storage media, including smart phones, to store the records of documents listed in paragraph (a) and photographs of themselves, their associates, their property, and their product. Traffickers usually maintain these photographs in their possession, in locations such as their homes, vehicles, electronic devices, or on their person;

    c.    **Storage of currency**: Traffickers also maintain on hand large amounts of money in order to maintain and to finance their ongoing narcotics business. Money can be concealed in their residences and may also include financial instruments, and evidence of financial transactions relating to narcotics trafficking activities; and

    d.    **Drug and Firearm trafficking paraphernalia**: Traffickers commonly have in their possession packaging material, cutting agents, digital scales, and other items used in the preparation and packaging of drugs and other firearms and ammunition.

7.    Because this Affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents, police officers, witnesses, cooperating sources, telephone records, and reports.



## **PROBABLE CAUSE**

8. On August 16, 2018, at 7:19 p.m., the Baltimore Police Department (BPD) responded to 2932 Oakford Avenue in Baltimore City for a report of a male armed with a firearm pointing the weapon at children and neighbors. Detective Johncox met a female neighbor who witnessed the incident.[2] She said TURNER yelled at children which escalated into an altercation between TURNER and herself outside 2932 Oakford Avenue. TURNER went into his residence on the second floor of 2932 Oakford Avenue after the argument and came back outside carrying a "machine gun." TURNER stood on the front porch and proceeded to point and wave the firearm at kids and adults standing outside. Witnesses stated that TURNER had a cellphone in his hand and appeared to be filming the event.

9. TURNER returned to his apartment and barricaded himself inside for hours. TURNER eventually left the apartment after speaking with BPD hostage negotiators. K.S. and B.S. (a juvenile) were also inside the residence with TURNER. All three individuals were taken to BPD Homicide unit; however, neither TURNER nor K.S. made a statement.

10. Officers secured TURNER's apartment and applied for a search and seizure warrant. The Honorable Timothy Doory of the Circuit Court for Maryland, Baltimore City, authorized a warrant for TURNER's residence. Officers recovered a Mossberg .22LR AR style rifle with a sawed off barrel, serial number EPF419536 from a wall vent;[3] body armor from the living area; one Ruger P95, 9mm caliber pistol with serial number 31630283, one Ruger model SR 22, .22 caliber pistol, with serial number 361-06862, one Smith & Wesson M&P 40 Shield,

---

[2] Body worn camera video captured the interview of the witness.
[3] Agents believe this weapon qualifies as a firearm defined under 26 U.S.C. § 5845(a).

.40 caliber pistol, with serial number HPM0075, and various types of ammunition in a safe inside the residence; and approximately 552 grams of marijuana, 33 grams of heroin and packaging material that is consistent with narcotics packaging in the middle bedroom from a locked safe.[4]

11. **Subject Electronic Device One** was recovered on TURNER's person and **Subject Electronic Device Two** was recovered in the middle bedroom. The **Subject Electronic Devices** and other recovered property was submitted to BPD Evidence Control Unit. The firearms, ammunition and cell phones were transferred to ATF custody[5] on September 7, 2018, and have remained in the substantially the same condition since their seizure.

12. I submit there is probable cause to believe that TURNER used the **Subject Electronic Devices** to obtain and distribute narcotics, obtain firearms, and record his criminal activity on August 16, 2018.

## CONCLUSION

13. Based on the facts as set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841, possession with the intent to distribute controlled dangerous substances, and 18 U.S.C. § 922(g), possession of a firearm by a prohibited person, have been committed by TURNER. There is further probable cause to believe that the **Subject Electronic Devices** contain evidence of these crimes.

14. WHEREFORE, I respectfully request that the Court issue a warrant authorizing members of the ATF, or their authorized representatives, including but not limited to other law

---

[4] TURNER is prohibited from possessing a firearm due to a previous conviction for First Degree Assault in 2012. This conviction carries a penalty of over a year incarceration and therefore qualifies as a felony as defined by 18 U.S.C. § 921.
[5] The cellphones were placed in the evidence vault at the ATF Baltimore Field Office located at 31 Hopkins Place, Baltimore, MD 21201.

enforcement agents assisting in the above described investigation, to search the **Subject Electronic Devices**, as described in Attachment A, and to search the **Subject Electronic Devices** for the purpose of identifying electronically stored data particularly described in Attachment B and using the protocols described in Attachment C.

Respectfully Submitted,

Special Agent Alfred Johnson II
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on this 24th of October 2018.

The Honorable A. David Copperthite
United States Magistrate Judge


## ATTACHMENT A

### Property to Be Searched

a. One blue Samsung Galaxy S9+ cellular telephone bearing IMEI number 353515090362055 that was recovered in the residence at 2932 Oakford Ave. (**Subject Electronic Device 1**) and located in the ATF Baltimore Field Division evidence vault at 31 Hopkins Place, Baltimore, Maryland 21201;

b. One black ZTE cellular phone cellular telephone that was recovered in the residence at 2932 Oakford Ave. (**Subject Electronic Device 2**) and located in the ATF Baltimore Field Division evidence vault at 31 Hopkins Place, Baltimore, Maryland 21201.




18 - 2 9 6 6 - ADC

## ATTACHMENT B

### Property to be Seized

This warrant authorizes the search and seizure of the following electronically stored information, contained within the items described in Attachment A:

a. digital images;

b. digital videos;

c. records of incoming and outgoing voice communications;

d. records of incoming and outgoing text messages;

e. the content of incoming and outgoing text messages;

f. voicemails;

g. voice recordings;

h. contact lists; and

i. location data;

that are related to the investigation into drug trafficking and/or firearms as more fully described in the Affidavit.



## ATTACHMENT C

### Search Protocols

The **Subject Electronic Devices** will be charged and powered on. The devices and all readable and searchable contents will be downloaded to a "CelleBrite" or "XRY" or similar device. The contents downloaded on the "CelleBrite" or "XRY" or similar device will then be copied to a readable computer disc and reviewed by your affiant. A search warrant return will be provided to the Court thereafter.

Because of the possibility that the files examined pursuant to the warrant will include information that is beyond the scope of what the United States has demonstrated the existence probable cause to search for, the search shall be conducted in a manner that will minimize to the greatest extent possible the likelihood that files or other information for which there is not probable cause to search is not viewed.

While this protocol does not prescribe the specific search protocol to be used, it does contain limitations to what the government investigators may view during their search, and the searching investigators shall be obligated to document the search methodology used in the event that there is a subsequent challenge to the search that was conducted, pursuant to the following protocol.

With respect to the search of any digitally/electronically stored information that is seized pursuant to this warrant, and described in Attachment B hereto, the search procedure shall include such reasonably available techniques designed to minimize the chance that the government investigators conducting the search will view information that is beyond the scope for which the probable cause exists.

The following list of techniques is a non-exclusive list which illustrates the types of search methodology that may avoid an overbroad search, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein:

a. Use of computer search methodology to conduct an examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether data falls within the items to be seized as set forth herein by specific date ranges, names of individuals, or organizations;

b. Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

c. Physical examination of the storage device, including digitally surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth herein; and

d. Opening or reading portions of files that are identified as a result of conducting digital search inquiries in order to determine their relevance.